# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMES RAY, et al.,

|  |  |  |  |
|---|---|---|---|
| | Plaintiffs, | : | Case No. 3:16-cv-364 |
| | | | District Judge Walter Herbert Rice |
| - vs - | | | Magistrate Judge Michael R. Merz |
| CALIBER HOME LOANS,  INC.,  et al. | | | |
| | Defendants. | : | |

---

## REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS OF DEFENDANT CALIBER HOME LOANS, INC.

---

This case is before the Court on Motion to Dismiss of Defendant Caliber Homes, Inc. ("Caliber")(ECF No. 9).

The Motion was filed and served September 6, 2016.  As required by Sixth Circuit precedent, the Magistrate Judge issued an order to Plaintiffs, who are proceeding pro se in this case, that they were required to respond to the Motion not later than September 30, 2016 (Order to Pro Se Plaintiffs, ECF No. 15).  No response was filed by that date and the Magistrate Judge recommended that the Motion be granted (Report and Recommendations, ECF No. 18).  Noting that Plaintiffs had filed a request for extension of time under Case No. 3:16-cv-163, their prior cases against Caliber Homes which had been voluntarily dismissed, District Judge Rice *sua sponte* rejected the Report and Recommendations and extended Plaintiffs' time to respond to and including October 21, 2016 (Entry of October 13, 2016, ECF No. 21).

1

Plaintiffs have now filed a timely Opposition (ECF No. 23) and Caliber has filed a Reply (ECF No. 25),[1] so the Motion is ripe for decision.

Federal R. Civ. P. 72(b)(3) lists "rejecting" a Magistrate Judge's report as one of the actions a District Judge may take when reviewing *de novo* a report to which objections have been made by a party.  Although Judge Rice used that term, nothing in his Entry reflects any review of the merits and the Magistrate Judge does not read it that way.  Instead, the Entry is correctly read as excusing the Plaintiffs' filing their request for extension under the incorrect case number and vacating the Magistrate Judge's denial of extension of time.  So that the docket is clear, the Magistrate Judge has withdrawn the rejected Report and considers the Motion *de novo*.

A motion to dismiss involuntarily is classified as a dispositive motion under 28 U.S.C. § 636(b), requiring a recommended disposition from an assigned Magistrate Judge.

The Motion to Dismiss is made under Fed. R. Civ. P. 12(b)(6) with Defendant Caliber asserting that the Complaint herein does not state a claim against it upon which relief can be granted.

"The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case."  Wright & Miller, FEDERAL PRACTICE AND PROCEDURE:  Civil 2d §1356 at 294 (1990); *see also Gex v. Toys "R" Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss

---

[1] Both parties have continued to caption their motion papers as if this case were assigned to my distinguished colleague, The Honorable Michael J. Newman.  Although this case was initially assigned to Judge Newman, the reference was transferred to the undersigned on September 14, 2016 (ECF No. 14).  The parties are cautioned to take care with the caption as misnumbering has caused unnecessary confusion:  Judge Newman granted the extension Plaitniffs requested in the closed case.

under Fed. R. Civ. P. 12(b)(6) is designed to test the sufficiency of the complaint. *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558 (*overruling Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and specifically disapproving of the proposition from *Conley* that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief"); *see also Association of*

*Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545 (6th Cir. 2007). In *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all

areas of federal law and not just in the antitrust context in which it was announced.

     "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)(on a

motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual

allegation.")

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation"

(internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the  assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678; *see also Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), *citing League of United Latin Am. Citizens. v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(stating allegations in a complaint "must do more than create speculative or suspicion of a legally cognizable cause of action; they must show entitlement to relief"); *see further Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009); *Tam Travel, Inc. v. Delta Airlines, Inc.* (*In re Travel Agent Comm'n Antitrust Litig.*), 583 F.3d 896, 903 (6th Cir. 2009); *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011) (holding a plaintiff is not entitled to discovery to obtain the necessary plausible facts to plead.)

Plaintiffs assert this Court has subject matter jurisdiction of their Complaint in part by virtue of the diverse citizenship of the parties  (Complaint, ECF No. 2, ¶¶ 1, 4, 5).  A federal

court exercising supplemental or diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims.  28 U.S.C. § 1652; *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States).  In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008);  *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992);  *Miles v. Kohli & Kaliher Assocs.*, 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue."  *In re Akron-Cleveland Auto Rental,  Inc.*, 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th  Cir. 1985); *Angelotta v. American Broadcasting Corp.*, 820 F.2d 806 (1987).

In general, a court may not consider any facts outside the complaint and any attached exhibits on a motion to dismiss for failure to state a claim.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th  Cir. 2001); *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th  Cir. 2001) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 2000)).  However, a court may consider documents that are referenced in the complaint or that are central to a plaintiff's claims.  *Travis v. ADT Sec. Services*, 884 F. Supp. 2d 629, 634 (E.D. Mich. 2012); *Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield of Mich.*, 2016 U.S. App. LEXIS 13453, \*9 fn. 3 (6th Cir. 2016); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th  1999).

**Count I:  Fraud**

Plaintiffs label Count I as a fraud claim against all Defendants.  Such a claim would arise under Ohio common law.  The elements of an action in actual fraud under Ohio law are (a) a representation or, where there is a duty to disclose, concealment, of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54 (1987), *citing Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St. 3d 69, ¶ 2 of the syllabus (1986); and *Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167 (1984).  While Ohio common law provides the elements of this tort, the Federal Rules of Civil Procedure govern how it must be pled.  Under Fed. R. Civ. P. 9(b), a fraud plaintiff must plead the time, place, and contents of misrepresentation.  *Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir. 1984).  The requirements of Fed. R. Civ. P. 9 are in addition to those in Fed. R. Civ. P. 8.

Caliber asserts the Complaint does not adequately allege an Ohio common law fraud claim against it (Motion, ECF No. 9, PageID 33-36).  According to Caliber, the only two factual allegations made in the Complaint are (1) that Assurant "offered Plaintiffs an amount of money to cover the property damage [that resulted from vandalism to the subject property after foreclosure] that was inadequate to cover the damages (*Id.* at PageID 34, citing Complaint, ECF No. 2, ¶ 24(d)) and (2) that Caliber put forced-place insurance on the property. *Id.* citing ¶ 24(e).

Plaintiffs respond that the Complaint alleges "Assurant, Defendant's agent, provided Plaintiffs with a false assessment of the property damages.  Assurant under-assessed the property damages to the Subject Property to prevent having to pay the proper insurance claim amount . . . [f]urthermore Plaintiffs allege Caliber forced placed an inflated monthly insurance charge based upon Assurant's false assessment."  (ECF No. 23, PageID 166.)

Paragraphs 24(d) and (e) reads as follows:

> d. Subsequent to the illegal lockout, Caliber hired Assurant, an insurance company to inspect the damages to the Subject Property. Assurant instructed its representative, Shawn Joers, to inspect the damages to the Subject Property.  Joers, nor any agent of Assurant, never [sic] conducted a complete inspection of the Subject Property, yet for its own financial gain, Assurant offered Plaintiffs a false, misleading, and deceptive insurance assessment of the damages to the Subject Property. Assurant under-assessed the damages to the Subject Property to prevent having to pay the proper amount for the damages to the Subject Property. To date, Assurant has only agreed to pay Plaintiffs $2,835.00 for the damages to the Subject Property, an amount grossly inefficient [sic] to cover the damages to the Subject Property.
>
> e. For its own financial gain, Caliber then force-placed an inflated monthly insurance charge based upon Assurant's false, misleading, and deceptive insurance assessment.

Plaintiffs' allegations are insufficient to plead a claim for relief for fraud.  Plaintiffs say that Assurant's assessment was "false", but statements can be false without being fraudulent.  To successfully plead fraud, Plaintiffs must plead that Assurant knew its assessment was false. Secondly, the Complaint itself negatives the element of justifiable reliance.  Plaintiffs plead that the amount offered is insufficient, but do not state they relied on it to their detriment.  Indeed, they fairly imply they have not, because they says Assurant has only agreed to pay a certain

amount "to date."  As to ¶ 24(e), there is no alleged false statement at all, but rather that Caliber

has relied on Assurant's false statement.

Plaintiffs' fraud claim against Caliber should therefore be DISMISSED WITHOUT

PREJUDICE for failure to state a claim upon which relief can be granted.

**Count II:  Violation of the Real Estate Settlement Procedures Act**

In Count II, which is pleaded solely against Defendant Caliber, Plaintiffs allege Caliber

violated the Real Estate Settlement Procedures Act ("RESPA") by not responding properly to a

qualified written request for documents (Complaint, ECF No. 2, PageID 9, ¶¶ 27-33).   In

particular, Plaintiffs allege Caliber failed

> to provide the original loan application, an allonge to evidence the
> transfer from Nationstar to Caliber, an allonge to the original note,
> proof of mortgage assignments from Nationstar to Caliber, a HUD-
> 1 settlement statement, a 3-day right to rescission, a "Truth in
> Lending" disclosure, a "Good Faith Estimate," and an amortization
> schedule.

*Id.*  at ¶ 30.

Plaintiff did not attach a copy of its alleged "qualified written request" ("QWR") or of

Caliber's response, but Caliber has attached them to its Motion.  Plaintiffs' QWR is dated March

21, 2016, and consists of ten[2] single-spaced pages of requests for information about the

Plaintiffs' loan (ECF No. 9, PageID 55-63).  The document consists of twenty-one paragraphs

requesting copies of documents; the balance is in the form a court would recognize as

---

[2] The exhibit attached to the Motion omits a page 9, but evidently there was such a page 9 in the original.

interrogatories.  Interestingly, the QWR directs that Caliber should send its response not to

Plaintiffs personally, but to The Fresh Start Firm LLC, in Phoenix, Arizona.

Caliber's response appears at ECF No. 9, PageID 65-71.  Thus Caliber did respond at

some length to the alleged QWR, but Plaintiffs challenge the sufficiency of the response.  The

relevant statute, 12 U.S.C. § 2605(e), provides

> (e) Duty of loan servicer to respond to borrower inquiries
> (1) Notice of receipt of inquiry
> (A) In general
> If any servicer of a federally related mortgage loan receives a
> qualified written request from the borrower (or an agent of the
> borrower) for information relating to the servicing of such loan, the
> servicer shall provide a written response acknowledging receipt of
> the correspondence within 5 days (excluding legal public holidays,
> Saturdays, and Sundays) unless the action requested is taken within
> such period.
> (B) Qualified written request  For purposes of this subsection, a
> qualified written request shall be a written correspondence, other
> than notice on a payment coupon or other payment medium
> supplied by the servicer, that—
> (i)
> includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and
> (ii)
> includes a statement of the reasons for the belief of the borrower,
> to the extent applicable, that the account is in error or provides
> sufficient detail to the servicer regarding other information sought
> by the borrower.
> (2) Action with respect to inquiry  Not later than 30 days
> (excluding legal public holidays, Saturdays, and Sundays) after the
> receipt from any borrower of any qualified written request under
> paragraph (1) and, if applicable, before taking any action with
> respect to the inquiry of the borrower, the servicer shall—
> (A)
> make appropriate corrections in the account of the borrower,
> including the crediting of any late charges or penalties, and
> transmit to the borrower a written notification of such correction
> (which shall include the name and telephone number of a

representative of the servicer who can provide assistance to the
borrower);

(B) after conducting an investigation, provide the borrower with a
written explanation or clarification that includes—

(i)

to the extent applicable, a statement of the reasons for which the
servicer believes the account of the borrower is correct as
determined by the servicer; and

(ii)

the name and telephone number of an individual employed by, or
the office or department of, the servicer who can provide
assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a
written explanation or clarification that includes—

(i)

information requested by the borrower or an explanation of why
the information requested is unavailable or cannot be obtained by
the servicer; and

(ii)

the name and telephone number of an individual employed by, or
the office or department of, the servicer who can provide
assistance to the borrower.

While there appears to be a dearth of published Sixth Circuit precedent on what the

proper scope of a QWR may be, Caliber has cited a number of District Court decisions from

various parts of the country defining the scope of such requests as considerably narrower than

Plaintiffs assert.  The Sixth Circuit authority cited, *Marais v. Chase Home Fin. LLC*, 736 F.3d

711 (6th Cir. 2013), quotes prior Sixth Circuit authority on the purpose of RESPA:

> The purposes underlying RESPA
>
> are very similar to those of the Truth in Lending Act. Congress's
> intent was "to insure that consumers throughout the Nation are
> provided with greater and more timely information on the nature
> and costs of the settlement process and are protected from
> unnecessarily high settlement charges caused by certain abusive
> practices that have developed in some areas of the country.

11

*Id.* at 719, *quoting Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 923 (6th Cir. 1980) (quoting 12 U.S.C. § 2601(a)).

Plaintiffs provide no authority for interpreting RESPA anywhere near as broadly as they assert, either by way of citation to legislative history or case law.  By their definition, virtually any document related to the mortgage transaction on a property would be subject to being produced in response to a QWR.

In interpreting a statute a court should:

> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then
>
> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169.  Applying that standard, the Magistrate Judge concludes Plaintffs' QWR is in fact far broader than authorized by the statute.

Additionally, Plaintiffs fail to plead actual damages as a result of the alleged RESPA violation.  Paragraph 33 of the Complaint merely alleges "Plaintiffs suffered damages as a result of Caliber's failure to respond to Plaintiffs qualified written requests for information."  (ECF No. 2, PageID 9.)  But that is a pleading of general damages, rather than actual damages associated with the alleged RESPA violation.  *See Martini v. JPMorgan Chase Bank, N.A.*, 634 Fed. Appx. 159 (6th Cir. 2015).

**Conclusion**

Plaintiffs' Complaint fails to state a claim upon which relief can be granted as to Caliber, either for common law Ohio fraud or for violation of RESPA.  The Complaint should therefore be dismissed without prejudice for failure to state a claim upon which relief can be granted.

October 31, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).

13